IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALIBU MEDIA, LLC  :

    v. : Civil Action No. DKC 14-3950

REDACTED :

**MEMORANDUM OPINION**

Plaintiff Malibu Media, LLC ("Plaintiff" or "Malibu") filed this action for copyright infringement under 17 U.S.C. §§ 101 *et seq.* against Defendant on December 18, 2014. Presently pending and ready for resolution is Plaintiff's motion for entry of default judgment. (ECF No. 21). The court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**IV. Background**

Plaintiff, a California-based company d/b/a X-Art.com, alleges Defendant violated the United States Copyright Act of 1976 ("Copyright Act") by using the BitTorrent file distribution network to distribute adult pornographic films subject to copyrights held by Plaintiff. (*See* ECF No. 9, at 1-2).

BitTorrent is a peer-to-peer file sharing system that allows users to interact with one another to distribute large files, including digital movie files. (*See id.* at 2-3). Individuals often use BitTorrent to obtain and circulate

infringed copyright content. (ECF Nos. 21-2, at 6; 21-4). The system allows users to distribute an entire file by sending small "bits" individually. Plaintiff alleges that its investigator, IPP International UG, downloaded "bits" of 23 of Plaintiff's copyrighted films from Defendant's Internet Protocol address ("IP address"). (ECF No. 9, at 3-4). Those downloads are the basis for this claim.

Initially, Plaintiff identified Defendant only by an IP address assigned to a customer on a specific date by an Internet Service Provider ("ISP"). Accordingly, Plaintiff moved to expedite discovery and serve a third-party subpoena on the ISP to obtain the identity of Defendant prior to a Rule 26(f) conference. The court granted the motion subject to conditions and limitations dictated by the sensitive nature of the action and the uncertainty surrounding the specificity of IP addresses. (ECF No. 6). Plaintiff then filed an amended complaint against Defendant, to which Defendant has not responded. (ECF No. 9). The clerk recorded an entry of default (ECF No. 18), and on November 12, 2015, Plaintiff filed the pending motion for default judgment seeking an award of statutory damages, injunctive relief, and attorney's fees and costs (ECF No. 21).

**V. Standard of Review**

Under Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

2

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The United States Court of Appeals for the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Fed.R.Civ.P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his

3

damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

**VI. Analysis**

Plaintiff moves for default judgment against Defendant for direct copyright infringement and seeks an award of statutory damages, injunctive relief, and attorney's fees and costs.

To establish copyright infringement liability, a plaintiff must prove two elements: (1) ownership of the copyright; and (2) copying of original constituent elements by the alleged defendant. 17 U.S.C. § 501(a); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff has met its burden through its pleadings by alleging it owns the 23 copyrights that Defendant obtained and distributed through BitTorrent. (ECF No. 9, at 1-3). Exhibit B of the amended complaint supports Plaintiff's assertion of ownership over the 23 copyrights, and Exhibit A supports its assertion that those copyrights were downloaded, copied, and distributed from Defendant's IP address using BitTorrent. (ECF Nos. 9-1; 9-2).

Because the court takes the well-pleaded allegations in a complaint as true upon entry of default, Plaintiff has established Defendant's liability for copyright infringement by default. *See Ryan*, 253 F.3d at 780. Accordingly, only questions of the appropriate relief remain.

**A.  Statutory Damages**

Plaintiff requests statutory damages of $1,500.00 per video, for a total of $34,500.00. (ECF 21-2, at 9). Under § 504(a) of the Copyright Act, an infringer of copyright is liable for either: (1) the copyright owner's actual damages and any additional profits of the infringer; or (2) statutory damages as provided by subsection (c). 17 U.S.C. 504(a). Section 504(c)(1) provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C § 504(c)(1); *see also Patrick Collins, Inc. v. Gillispie*, No. 11-cv-01776-AW, 2012 WL 666001, at *3 (D.Md. Feb. 23, 2012). The court has broad discretion in setting the amount of statutory damages under the Copyright Act. *Microsoft Corp. v. Grey Computer*, 910 F.Supp. 1077, 1091 (D.Md. 1995) (citing

5

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 (4th Cir. 1991)).

The court may also award a maximum of $150,000.00 in enhanced damages if a plaintiff proves the defendant committed the infringement willfully. 17 U.S.C. § 504(c)(2). Courts have determined that an award of enhanced damages under § 504(c)(2) is only appropriate when the plaintiff shows the infringer "either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights." *See Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F.Supp.2d 737, 753 (D.Md. 2003). Plaintiff does not seek enhanced damages, and judges in this district have routinely refused to grant enhanced damage awards in cases similar to this. *See*, *Malibu Media, LLC v. [Redacted]*, CCB-15-1700, 2016 WL 245235, at *1 (D.Md. Jan. 21, 2016); *Gillispie*, 2012 WL 666001, at *3. Accordingly, enhanced damages are not appropriate in this case.

When awarding statutory damages pursuant to § 504(c)(1), which allows awards between $750.00 and $30,000.00 per infringement, courts consider a variety of factors. *See Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *2. Judge Blake identifies these factors:

> (1) [W]hether the defendant was the original provider of the infringed content to its distribution network; (2) whether, and how much, the defendant profited or saved in connection with the infringement; (3) plaintiff's actual losses; (4) whether the

6

> plaintiff's request would result in a "windfall"; (5) the deterrent effect of statutory damages; and (6) the defendant's willfulness and intent in infringing the plaintiff's protected content.

*Id.* Under the above analysis, Judge Blake determined the statutory minimum of $750.00 per infringed work was not only sufficient, but excessive. *Id.* at *2 n.2.

The recent trend in courts across the country is to award the minimum statutory award of $750.00 per violation to Malibu or other plaintiffs in similar infringement actions. *See, e.g.*, *Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *1 (awarding $750.00 per work, totaling $92,250.00); *Malibu Media, LLC v. Powell*, No. 1:15-CV-1211, 2016 WL 26068, at *1 (M.D.Pa. Jan. 5, 2016) (awarding $750.00 per work, totaling $39,750.00); *Malibu Media, LLC v. Saari*, No. 1:14-cv-00860-JMS-MJD, 2015 WL 5056887, at *2 (S.D.Ind. Aug. 26, 2015) (awarding $750.00 per work, totaling $9,750.00); *Malibu Media, LLC v. Caswell*, No. 2:14-cv-837, 2015 WL 3822904, at *2 (S.D.Ohio June 19, 2015) (awarding $750.00 per work, totaling $21,750.00); *Malibu Media, LLC v. Funderburg*, No. 1:13-cv-02614, 2015 WL 1887754, at *4 (N.D.Ill. April 24, 2015) (awarding $750.00 per work, totaling $9,000.00). Prior to 2015, courts often awarded statutory damages between $1,500.00 and $2,500.00 per violation. *See, e.g.*, *Malibu Media, LLC v. Cowham*, No. 3:13-cv-00162-PPS-CAN, 2014 WL 2453027, at *2 (N.D.Ind. June 2, 2014) (awarding $1,500.00 per work, totaling

7

$36,000.00); *Malibu Media, LLC v. Goodrich*, No. 12-cv-01394, 2013 WL 6670236, at *11 (D.Colo. Dec. 18, 2013) (awarding $2,250.00 per work, totaling $36,000.00); *Malibu Media, LLC v. Brenneman,* No. 3:13-cv-00332-PPS-CAN, 2013 WL 6560387, at *3 (N.D.Ind. Dec. 13, 2013)(awarding $1,500.00 per work, totaling $16,500.00).  Many of the recent cases, however, note the growing judicial concern with "the rise of so-called 'copyright trolls' in the adult film industry, meaning copyright holders who seek copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream and file mass lawsuits against anonymous Doe defendants with the hopes of coercing settlements."  *Malibu Media, LLC v. Brenneman,* 2013 WL 6560387, at *3 (citing *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 189-90 (D.Mass. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent.L.Rev. 79, 86 (2012)). The court notes the concerning nationwide trend, but makes no determination as to Plaintiff's motivation in this case.

Here, an award of the minimum statutory damages — $750.00 per infringement for each of the 23 infringements, totaling $17,250.00 — is more than adequate to compensate Plaintiff and help deter future copyright infringement.  The record here provides "no evidence suggesting the defendant was the original 'seed' or provider of the protected content on the BitTorrent

network." *Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *2. Neither does the evidence show, nor even suggest, Defendant profited from Plaintiff's copyrighted films. Moreover, Plaintiff has provided barely a scintilla of evidence as to actual losses suffered because of Defendant's conduct. Plaintiff asserts that "Defendant materially aided each of the other participants in the BitTorrent swarm of infringers." (ECF No. 21-2, at 10). This swarm, according to Plaintiff, continues to grow and contains "thousands of peers" whose conduct, taken together, results in lost sales far exceeding the requested $34,500.00. (ECF No. 21-2, at 10). Plaintiff, however, provides no evidence as to the actual make-up of the alleged "swarm" or its quantitative effect on Plaintiff's profits.[2] Finally, the available evidence does not establish the extent and nature of Defendant's willfulness.

The court appreciates Plaintiff's desire to deter copyright infringers from engaging in piracy of its works. Undoubtedly, one of the purposes of awarding damages pursuant to the Copyright Act is to deter copyright infringement. An award of the statutory minimum for each of nearly two dozen works

---

[2] Although Plaintiff is not required to prove actual damages to be entitled to an award of statutory damages, *see Gnossos Music v. Mitken, Inc.*, 653 F.2d 117, 118 (4th Cir. 1981) (citing *Douglas v. Cunningham*, 294 U.S. 207, 209 (1935)), a lack of evidence as to actual damages can dissuade the court from awarding statutory damages above the minimum. *See Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *2.

accomplishes the goal of deterrence. Thus, having considered each factor as well as recent opinions of judges in this district and others, the court is not persuaded that an award above the statutory minimum is warranted. Accordingly, Plaintiff will be awarded the statutory minimum of $750.00 per infringement for each of the 23 infringements for a total award of $17,250.00.

### B. Injunctive Relief

In addition to monetary damages, Plaintiff seeks injunctive relief pursuant to 17 U.S.C. § 502(a) and 17 U.S.C. § 503(b). Specifically, Plaintiff requests the court permanently enjoin Defendant from continuing to infringe Plaintiff's copyrights, order Defendant to delete and forever remove digital media files relating to Plaintiff's copyrights from all of Defendant's computers, and order Defendant to delete and forever remove the infringing copies of the copyrights Defendant has on his computers. (ECF No. 21-2, at 11).

As to Plaintiff's first request, § 502(a) provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a). As to Plaintiff's second and third requests, § 503(b) provides further relief, stating that "the court may order the destruction . . .

of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b).  To obtain a permanent injunction, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156-57 (2010)).

Plaintiff has sufficiently demonstrated that injunctive relief is appropriate in this action.  Plaintiff will likely suffer irreparable harm absent an injunction, and monetary relief would be inadequate compensation.  (ECF No. 21-2, at 12). The nature of the BitTorrent system means the Plaintiff's works can continue to circulate the internet at a fast rate and reach many users.  Should this distribution persist, Plaintiff would likely be without legal recourse in regard to the copyrights implicated in the current case.  As to the balance of hardships, Defendant suffers no injury due to an injunction other than what would "be a result of [Defendant] ceasing the allegedly infringing conduct."  *Medias & Co., Inc. v. Ty, Inc.*, 106 F.Supp.2d 1132, 1140 (D.Colo. 2000).  Finally, the prevention of copyright infringement serves the public interest.  Accordingly,

the court will grant Plaintiff's request for permanent injunction and destruction of digital media files and infringing copies of Plaintiff's work pursuant to 17 U.S.C. § 502(a) and 17 U.S.C. § 503(b) of the Copyright Act.

**C. Attorney's Fees and Costs**

Plaintiff requests $1,182.00 in attorney's fees and $460.00 in costs. "In any action under this title, the court in its discretion may allow the full recovery of costs . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also Malibu Media, LLC v. [Redacted]*, 2016 WL 245235, at *1. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the

> amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's Inc*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

Here, Plaintiff's request for attorney's fees in the amount of $1,182.00 for 9.1 hours of work is reasonable. Plaintiff's counsel, Jon A. Hoppe, provides a declaration in support of the fees requested attesting to the number of hours spent on this matter by him and the paralegal: 1.9 hours and 7.2 hours, respectively. (ECF No. 21-1, at 2). Counsel requests $300.00 per hour for himself and $85.00 per hour for the paralegal. Because the hourly rates sought for both attorney and paralegal fees fall on the lower end of the guidelines set forth in the Local Rules, Local Rules App'x B, additional documentation as to prevailing market rates is unnecessary in this case. Counsel's declaration includes sufficient detail, and the paralegal completed the vast majority of tasks, thereby demonstrating an effort to minimize the costs of litigation. Moreover, the time record does not reflect any overly redundant, excessive, or unnecessary work, and the number of hours is reasonable and well documented. Accordingly, there is no reason to adjust the lodestar, and the entire fee is approved.

Plaintiff also seeks $460.00 for costs incurred, $400.00 for a statutory filing fee and $60.00 for process service fees. (ECF No. 21-1, at 2). "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Westland Fire Prot., Inc.*, No. DKC 12-1421, 2014 WL 824121, at *3 (D.Md. Feb. 28, 2014) (citing *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). Here, the requested costs are reasonable.

Because Plaintiff's requests as to both attorney's fees and costs attributable to this claim are reasonable, the court will award Plaintiff attorney's fees and costs totaling $1,642.00.

**IV. Conclusion**

For the foregoing reasons, the motion for default judgment filed by Plaintiff Malibu Media, LLC will be granted in part and denied in part. Judgment will be entered for Plaintiff in the amount of $17,250.00 in damages and $1,642.00 in attorney's fees and costs. A separate order will follow.

                                        /s/
                            DEBORAH K. CHASANOW
                            United States District Judge